**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **FEDERAL DEPOSIT INSURANCE COMPANY, as Receiver for ARCOLA HOMESTED SAVINGS BANK,** | ) ) ) | |
| | ) | |
| **Plaintiff/Counterclaim Defendant,** | ) ) | |
| **v.** | ) ) | |
| **THOMAS J. VANN; Unknown Owners; and Non Record Claimants,** | ) ) ) | **No. 11 C 3491** |
| **Defendant/Counterclaim Plaintiff.** | ) ) | **Judge Joan H. Lefkow** |
| _____ | ) ) | |
| **THOMAS J. VANN,** | ) ) | |
| **Third-Party Plaintiff,** | ) ) ) | |
| **v.** | ) ) | |
| **FEDERAL DEPOSIT INSURANCE COMPANY, Acting as Receiver for ARCOLA HOMESTED SAVINGS BANK, ARCOLA HOLDINGS INC., SALVATORE DIBENEDETTO, JULIA DIBENEDETTO, DOCTOR KENNETH BARRICK, PRISM TITLE, LLC, JUAN FAVELA and RAMSES FAVELA, and SHARON KATOR.** | ) ) ) ) ) ) ) ) ) ) | |
| **Third-Party Defendants.** | ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

The Federal Deposit Insurance Company ("FDIC"), acting as the receiver for the Arcola

Homested Savings Bank ("Arcola"), filed a two-count complaint against Thomas J. Vann

("Vann") seeking to (1) foreclose a mortgage securing payment under two promissory notes and

(2) enforce those promissory notes.[1]  Vann filed an answer and amended affirmative defense

against the FDIC alleging unclean hands and a duty to mitigate.[2]  Vann also filed a five-count

amended counterclaim and third-party complaint against the FDIC, Prism Title, LLC ("Prism

Title") and other third-party defendants[3] alleging fraud, breach of fiduciary duty, and conspiracy

and seeking declaratory relief and an accounting.[4]  Vann named Prism Title as a third-party

defendant in four of the counts in his third-party complaint:  count II (declaratory relief); count

III (breach of fiduciary duty); count IV (accounting); and count V (conspiracy).  Presently before

the court are (a) the FDIC's motion to strike Vann's unclean hands affirmative defense and

dismiss Vann's amended counterclaim and (b) Prism Title's motion to dismiss Vann's amended

---

[1]  This court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 because the FDIC's claims arise under federal law.  *See* 12 U.S.C. § 1819(b)(2)(A) ("[A]ll suits of a civil nature at common law or in equity to which the [the FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States.").  Venue is proper in this district because the transaction giving rise to this lawsuit took place within the district.  *See* 28 U.S.C. § 1391(b)(2).

[2]  Vann initially filed two affirmative defenses against the FDIC alleging unclean hands and duty to mitigate but subsequently withdrew his duty to mitigate affirmative defense.  *See* Dkts. 41, 55.  The court granted Vann leave to file an amended affirmative defense.  Dkt. 55.

[3]  Dr. Kenneth Barrick initially filed a motion to dismiss Vann's amended counterclaim and third-party complaint.  Dkt. 57.  He subsequently filed for Chapter 7 bankruptcy protection and these proceedings against him are currently stayed pending the bankruptcy court proceedings.

[4]  The court granted Vann leave to file his amended counterclaims and third-party complaint.  Dkt. 55.  Vann alleges that this court has subject matter jurisdiction over his amended counterclaim and third-party complaint based on diversity of citizenship.  28 U.S.C. § 1332; *see Ruderman* v. *Bank of Am., N.A.*, No. 10 C 6153, 2012 WL 4795705, at *2 (N.D. Ill. Oct. 9, 2012) ("A third-party claim must be supported by federal subject matter jurisdiction.  A third-party claim either may be supported by an independent basis of subject matter jurisdiction such as federal question jurisdiction or diversity of citizenship jurisdiction—or, where the claim is brought by the defendant, by supplemental jurisdiction under 28 U.S.C. § 1367(a).") (citing 3 MOORE'S FEDERAL PRACTICE § 14.03 (3d ed. 2011)); *Leipzig* v. *AIG Life Ins. Co.*, 362 F.3d 406, 410 (7th Cir. 2004) ("[A] compulsory counterclaim does not require an independent grant of jurisdiction.  Even a permissive counterclaim, if part of the same case or controversy (a condition met here), may be brought under the supplemental-jurisdiction statute, 28 U.S.C. § 1367(a), without an independent basis of jurisdiction.") (internal citation omitted).  The court finds that it has subject matter jurisdiction over the third-party claims and counterclaim pursuant to 28 U.S.C. § 1367(a).

counterclaims and third-party complaint. The FDIC and Prism Title's motions are granted

without prejudice to Vann's filing an amended pleading.

## BACKGROUND[5]

The FDIC alleges that on December 12, 2008, Vann (as a borrower) granted Arcola (the

lender) a mortgage on property located at 4521 West Ogden Avenue in Chicago, Illinois ("the

property") in exchange for approximately $600,000. The same day, Vann also signed a

Commercial Promissory Note and a Balloon Note payable to Arcola secured by the mortgage.

These notes obligated Vann to repay the $600,000 loan to Arcola. The FDIC alleges that Vann

failed to make payments pursuant to these notes and it now seeks to foreclose on the property

and demands repayment of the outstanding amount due on the notes, which it claims is

$704,226.05.

Vann alleges that he was the victim of fraud and never held an interest in the subject

property nor was he a party to the loan. According to Vann, Salvatore DiBenedetto

("DiBenedetto") orchestrated a fraudulent scheme where DiBenedetto deceived Vann into

making the notes and granting Arcola the mortgage on the property. DiBenedetto persuaded

Vann to consider a transaction where Vann would become the owner of the property, which

DiBenedetto represented was worth in excess of $850,000.[6] In connection with the transaction,

Vann reviewed and executed loan documents. DiBenedetto then forged Vann's name on

---

[5] As explained *infra* in the Legal Standard, because Vann is the non-movant, the court takes as true all facts alleged in the amended affirmative defense, amended counterclaim and third-party complaint and construes all reasonable inferences in favor of Vann. *See Circle Grp. Holding, Inc.* v. *Akhamzadeh*, No. 05 C 3921, 2006 WL 2548164, at *7 (N.D. Ill. Sept. 1, 2006); *Fried Trading Co.* v. *Austern*, No. 86 C 8223, 1987 WL 4773, at *1 (N.D. Ill. April 20, 1987).

[6] It is not apparent from Vann's pleadings why he initially agreed to this transaction or what benefit he stood to receive, if any at all.

documents necessary to facilitate the loan and substituted pages in the loan documents that Vann had not reviewed. DiBenedetto further misrepresented Vann's financial condition in the loan documents. DiBenedetto then had his wife, Julia DiBenedetto, notarize documents with Vann's signature. Julia DiBenedetto was not present when Vann signed any documents in connection with the loan.

Prism Title acted as title agent and escrowee. Vann did not attend the closing and never communicated with Prism Title or gave it authority to act on his behalf. Prism Title's Senior Title Examiner, Sharon Kator, was present at the closing where Arcola tendered approximately $600,000 to Prism Title as the escrowee. After subtracting the costs associated with the closing, Prism Title issued a check for approximately $500,000 to Vann. Vann's signature was forged on the back of the check endorsing it to Dr. Kenneth Barrick ("Barrick"). Prism Title tendered the check to DiBenedetto or one of his coconspirators who then deposited the check into a bank account held by Barrick. DiBenedetto, Barrick, and other coconspirators withdrew funds from that account for their own benefit and use. Vann did not know that the funds dispersed by Arcola were deposited in Barrick's bank account. Nor did Vann knowingly take title to the property at the closing.

While DiBenedetto was perpetuating this scheme, the FDIC began investigating Arcola's financial condition. The FDIC determined that Arcola was mishandling commercial loans by using unqualified individuals to conduct loan transactions. On or about June 9, 2009, the FDIC issued a cease and desist letter to Arcola requiring that it "retain qualified management," namely by having a senior lending officer on staff. On June 4, 2010, the Director of the Division of Banking for the Illinois Department of Financial and Professional Regulation declared Arcola

insolvent and appointed the FDIC as Arcola's receiver.  As receiver, the FDIC succeeded to all of Arcola's rights under each note and the mortgage.

On April 6, 2011, the United States Attorney's Office for the Central District of Illinois charged DiBenedetto in a four-count indictment with bank fraud for his role in six fraudulent real estate schemes in which he allegedly provided mortgage management services for Arcola. One of the charged schemes included the property at issue.  According to the indictment, because DiBenedetto performed mortgage management services for Arcola he was able to control the processing of mortgage applications and facilitate financing from the bank. DiBenedetto convinced owners of distressed realty to transfer their properties via quit claim deeds to third parties who would obtain financing from Arcola to rehabilitate the properties. DiBenedetto then allegedly recruited buyers for those properties telling them that he would assist with obtaining financing from Arcola and that he would pay the mortgage payment and related expenses until the property was sold.  DiBenedetto falsely informed the title company that he was Arcola's representative and was able to close the loan.  Relying on statements made by DiBenedetto, Arcola personnel deposited the loan proceeds with the title company, which then disbursed the funds to accounts controlled by DiBenedetto and another unnamed individual. DiBenedetto used those proceeds for his own benefit and failed to make the mortgage payments resulting in the loans defaulting.  Vann relies on the allegations in the DiBenedetto indictment to substantiate his unclean hands affirmative defense, amended counterclaim, and third-party complaint.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6); *Gen. Elec.*

*Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

Federal Rule of Civil Procedure 12(f) allows the court to strike affirmative defenses when they are insufficient from the face of the pleadings. Fed. R. Civ. P. 12(f); *Heller Fin., Inc.* v. *Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Affirmative defenses are pleadings and the pleading requirements of the Federal Rules of Civil Procedure 8 and 9 apply. *See Reis Robotics USA, Inc.* v. *Concept Indus., Inc.*, 462 F. Supp. 2d 897, 904 (N.D. Ill. 2006); *Bobbitt* v. *Victorian House, Inc.*, 532 F. Supp. 734, 736–37 (N.D. Ill. 1982).[7] Affirmative defenses must

_____

[7] While the Seventh Circuit has not addressed whether the standard articulated by the United States Supreme Court in *Twombly* and *Iqbal* apply to affirmative defenses, judges in this district have found that these requirements also apply to affirmative defenses. *See, e.g., Massenberg* v. *A & R Servs., Inc.*, No. 10 C 7187, 2011 WL 2909364, at *1 (N.D. Ill. July 18, 2011) (Holderman, J.); *Riemer* v. *Chase Bank USA, N.A.*, 274 F.R.D. 637, 639 (N.D. Ill. 2011) ("Although *Twombly* and *Iqbal* dealt with the detail required in the allegations of a complaint, courts in this and many other districts have extended *Twombly*'s heightened pleading standard to affirmative defenses.") (Cole, J.) (collecting cases); *but see Leon* v. *Jacobson Transp. Co.*, No. 10 C 4939, 2010 WL 4810600, at *1 (N.D. Ill. Nov. 19, 2010) ("[T]his Court respectfully disagrees with the proposition that a defendant must include sufficient factual allegations in affirmative defenses to make them plausible.") (Marovich, J.).

meet the pleading standards of Rule 12(b)(6) and are subject to dismissal if they fail to state a claim upon which relief may be granted. *Renalds* v. *S.R.G. Rest. Grp.*, 119 F. Supp. 2d 800, 802 (N.D. Ill. 2000). While motions to strike are generally disfavored, they are useful in disposing of "unnecessary clutter from the case." *Heller*, 883 F.2d at 1294.

Rule 8(a) allows for notice pleading and provides that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ind. Trust Corp.* v. *Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (citing Fed. R. Civ. P. 8(a)(2)). The complaint must provide "fair notice" of the claim and its basis. *Id.* (internal quotation marks omitted).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b)'s pleading threshold, the pleader must detail "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Gen. Elec.*, 128 F.3d at 1078 (internal quotation marks omitted); *Vicom Inc.* v. *Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). Stated differently, the complaint must include the "who, what, when, and where of the alleged fraud." *Uni*Quality, Inc.* v. *Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (internal quotation marks omitted).

## DISCUSSION

### I.     The FDIC's Motion to Strike Vann's Unclean Hands Affirmative Defense

The FDIC argues that Vann's affirmative defense was not properly pleaded and is barred by the Supreme Court's decision in *D'Onech, Duhme and Company* v. *Federal Deposit*

*Insurance Company*, 315 U.S. 447, 62 S. Ct. 676, 86 L. Ed. 2d 956 (1942) and under 12 U.S.C. §

1823(e).  An affirmative defense admits the allegations of the complaint but raises an excuse to

avoid liability.  *Riemer*, 274 F.R.D. at 639.  Judges in this district have applied the following

three-prong test when deciding whether to grant a motion to strike an affirmative defense:  (1) is

the matter appropriately raised as an affirmative defense, (2) is the defense adequately pleaded

under Rules 8 and 9, and (3) does the defendant set forth a set of facts establishing the defense to

withstand a Rule 12(b)(6) challenge.  *Renalds,* 119 F. Supp. 2d at 802-03; *Bobbitt*, 532 F. Supp.

at 736-737 (internal citations omitted).  As to the first factor, unclean hands is a recognized

affirmative defense that prevents a party from obtaining equitable relief if it engaged in

misconduct.  *Young* v. *Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 822 (7th Cir. 2010);

*Nat'l Council on Compensation Ins., Inc.* v. *Am. Int'l Grp., Inc.*, No. 07 C 2898, 2009 WL

466802, at \*9 (N.D. Ill. Feb. 23, 2009).

      As to the second factor, Vann alleged that DiBenedetto committed acts "in furtherance of

the fraud on Vann and others, without the knowledge or approval of Vann or others of victims of

the fraud[.]" (Am. Affirmative Defenses, ¶ 53.)  By intertwining allegations of fraud with his

unclean hands affirmative defense, Vann triggers the pleading requirements of Rule 9(b).[8] *See*

---

[8] Vann argues that his unclean hands defense is based on DiBenedetto's and his conspirators' misconduct and bad faith and his affirmative defense pleaded those theories.  Vann, however, does not identify which allegations are based on misconduct and bad faith as opposed to fraud.  Moreover, as its currently pleaded, Vann's unclean hands affirmative defense is based on DiBenedetto's scheme to defraud.  If Vann contends that his unclean hands affirmative defense encompasses additional theories, he needs to identify which allegations are based on misconduct and bad faith and which are based on fraud. *See, e.g.*, *Kennedy* v. *Venrock Assoc.*, 348 F.3d 584, 593 (7th Cir. 2003) ("Rule 9(b) is strictly construed; it applies to fraud and mistake and nothing else.  And if both fraudulent and nonfraudulent conduct violating the same statute or common law doctrine is alleged, only the first allegation can be dismissed under Rule 9(b), though if, while the statute or common law doctrine doesn't require proof of fraud, only a fraudulent violation is charged, failure to comply with Rule 9(b) requires dismissal of the entire charge.") (internal citations omitted).

Fed. R. Civ. P. 9(b); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust* v. *Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011) ("[T]he dictates of Rule 9(b) apply to allegations of fraud[.]"); *Ocean Atl. Woodland Corp.* v. *DRH Cambridge Homes, Inc.*, No. 02 C 2523, 2003 WL 1720073, at *5 (N.D. Ill. Mar. 31, 2003) ("If fraud is alleged under the doctrine of unclean hands, Rule 9(b) requires that allegations of fraud include the particular circumstances involved, including the time, place, and specific contents of the alleged false representations or omissions."); *Zic* v. *Italian Gov't. Travel Office*, 130 F. Supp. 2d 991, 999 n.8 (N.D. Ill. 2001) ("Although 'unclean hands' is an equitable defense that need not necessarily be plead [sic] with particularity, [the plaintiff's] first affirmative defense alleges that [the defendant's] hands are unclean because it acted 'fraudulently,' thus it invokes the heightened pleading requirement of Rule 9(b).").

Vann alleges that DiBenedetto, as Arcola's agent, conspired with others and perpetrated a fraud by forging Vann's signature to documents required to complete the loan. To further substantiate his argument, Vann alleges that DiBenedetto misrepresented Vann's financial condition to Arcola; substituted pages in the loan documentation that Vann never reviewed; forged Vann's signature on the back of the closing check that was later deposited into an account controlled by Barrick; and instructed his wife to notarize loan documents with Vann's signature unbeknownst to Vann.

Vann, however, fails to set forth the who, what, where and when of the alleged fraud as to Arcola, which is necessary to satisfy Rule 9(b). *See Gen Elec.*, 128 F.3d at 1078; *Uni\*Quality*, 974 F.2d at 923. Instead, Vann recites generally from the DiBenedetto indictment, which also included five other transactions not at issue here, and insinuates that the fraud charged there satisfies his pleading requirements in this case. For example, Vann alleges that

9

DiBenedetto conspired with others by allegedly forging Vann's signature to loan documents but he does not identify who forged the signature. Nor does Vann detail each person's role in the conspiracy; rather, he impermissibly lumps them together. *See Vicom, Inc.*, 20 F.3d at 778 ("[I]n a case involving multiple defendants, such as the one before us, the complaint should inform each defendant of the nature of his alleged participation in the fraud.") (internal quotation marks omitted); *Sears* v. *Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (instead of specifying who was involved in the fraudulent activity, "the complaint lump[ed] all the defendants together and [did] not specify who was involved in what activity."). Nor does Vann allege what loan documents DiBenedetto allegedly forged, or where or when this forgery took place. Vann admits to signing and reviewing some documents (although he does not identify what documents those are) (Am. Affirmative Defense ¶¶ 53–54) while arguing the he neither saw nor signed the documents necessary to complete the transaction.

Vann argues that he should be excused from Rule 9(b)'s specificity requirement because the FDIC knows what documents are at issue and thus possesses the requisite knowledge of DiBenedetto's fraud. Rule 9(b)'s particularity requirement can be relaxed in cases where a party "lacks access to all facts necessary to detail his claim." *Pirelli*, 631 F.3d at 446 (quoting *Corley* v. *Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1050 (7th Cir. 1998)). Such is not the case here. Although Vann contends that someone forged his signature on the loan documents, he does not allege that he was unaware of the financing. At a minimum, Vann's allegations reveal that he was aware of a possible loan transaction that allowed him to obtain financing to purchase the property from Arcola. Vann acknowledges reviewing and executing documents in connection with the deal, just not the ones that were ultimately used to obtain the financing. Vann cannot

maintain that he was unaware of this transaction when his pleadings suggest otherwise. Vann's affirmative defense fails to comply with the specificity required by Rule 9(b) and this failure is not excused.[9] The FDIC's motion to dismiss is granted without prejudice and Vann is granted leave to amend his unclean hands affirmative with the particularity required by Rule 9(b).

## II. The FDIC's Motion to Dismiss Vann's Amended Counterclaim

Vann asserts a counterclaim against the FDIC for declaratory judgment seeking resolution regarding his interest in the property and liability on the promissory notes. Vann argues that he never agreed to receive financing from Arcola to purchase the property and cannot be held liable for the outstanding payments. The FDIC argues that Vann does not allege his declaratory judgment counterclaim with the particularity required by Rule 9(b). The Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, provides that federal courts "may declare the rights and other legal relations of any interested party" in a case or controversy. 28 U.S.C. § 2201. Although the FDIC does not raise this issue, federal courts have discretion to decline to hear a declaratory judgment action that is within their jurisdiction where it is duplicative of other substantive claims. *See Tempco Elec. Heater Corp.* v. *Omega Eng., Inc.*, 819 F.2d 746, 747 (7th Cir. 1987) ("It is well settled that the federal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction."); *Vill. of Sugar Grove* v.

---

[9] The FDIC additionally argues that the *D'Oench* doctrine and 12 U.S.C. § 1823(e) preclude Vann from asserting unclean hands as an affirmative defense. The common law rule espoused by the Supreme Court in *D'Oench* and its subsequent codification in 12 U.S.C. § 1823(e) provides that "unwritten agreements between a federally insured financial institution and its borrowers or other obligors are not enforceable against the federal banking authorities when as receivers or otherwise they step into the financial's institution's shoes." *Resolution Trust Corp.* v. *Ehrenhaus*, 34 F.3d 441, 442 (7th Cir. 1994). In his response, Vann argues that DiBenedetto's actions amounted to fraud *in factum* (or fraud in the execution) and thus *D'Oench* and 12 U.S.C. § 1823(e) are inapplicable. The court need not decide whether the applicability of the *D'Oench* doctrine and § 1823(e) at this time because Vann failed to plead fraud with the required specificity.

*FDIC*, No. 10 C 3562, 2011 WL 3876935, at *9 (N.D. Ill. Sept. 1, 2011) ("We have discretion to decline to hear a declaratory judgment action, and courts have exercised that discretion where a plaintiff seeks a declaratory judgment that substantially overlaps its substantive claims.") (internal citation omitted); *Classic Bus. Corp.* v. *Equilon Enter., LLC*, No. 09 C 7735, 2011 WL 290431, at *5 (N.D. Ill. Jan. 27, 2011) ("Where a claim for declaratory judgment presents the same issues as the remaining substantive claims, it serves no useful purpose and should be dismissed."); *Amari* v. *Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002) ("All of the issues in the declaratory judgment claim will be resolved by the substantive action, so the declaratory judgment serves no useful purpose.").

Vann incorporates the allegations from his fraud counterclaim into his declaratory judgment counterclaim. Vann contends that DiBenedetto committed acts "in furtherance of the fraud on Vann and others, without the knowledge or approval of Vann or others of victims of the fraud[.]" (Am. Countercl. & Third-Party Compl., ¶ 53.) Vann requests that this court enter declaratory relief ruling that he never purchased the property and was not a party to the loan agreement with Arcola. The resolution Vann seeks in his request for declaratory relief will necessarily be resolved when addressing the merits of the fraud counterclaim. His request for declaratory relief is thus duplicative of that counterclaim. Judicial economy weighs in favor of dismissing this count as the court will address the same issues when resolving the fraud counterclaim on its merits. *See Dixie Gas & Food, Inc.* v. *Shell Oil Co.*, No. 03 C 8210, 2005 WL 1273273, at *9 (N.D. Ill. May 25, 2005) ("Both parties will be able to have the substantive merits of their positions decided without plaintiffs' declaratory judgment claims, and the litigation will be made more efficient by eliminating the unnecessary declaratory judgment.").

12

The court thus declines to exercise jurisdiction over the declaratory judgment counterclaim and dismisses this count.

### III.    Prism Title's Motion to Dismiss Vann's Third-Party Complaint

Vann alleges that Prism Title, in its capacity as title agent and escrowee, tendered the closing check of approximately $500,000 to DiBenedetto without Vann's knowledge in violation of its fiduciary duties.  Vann also contends that Prism Title, through its employee Sharon Kator, conspired to defraud Vann by purporting to act as Vann's agent during the closing.  Prism Title has moved to dismiss counts III and V arguing that the allegations trigger Rule 9(b) but fail to satisfy its heightened pleading standard.[10]

#### A.    Breach of Fiduciary Duty

Vann alleges that Prism Title breached its fiduciary duty as escrowee by misdirecting and surrendering the $500,000 disbursed by Arcola in Vann's name to DiBenedetto and his coconspirators.  Under Illinois law, to establish a breach of fiduciary duty claim, Vann must show that (1) a fiduciary duty existed, (2) that duty was breached; and (3) the breach of the duty proximately caused damages.  *Gross* v. *Town of Cicero, Ill.*, 619 F.3d 697, 709 (7th Cir. 2010).

Prism Title argues that Vann is required to plead his breach of fiduciary duty claim with Rule 9(b)'s particularity because the underlying breach involves fraudulent conduct.  *See, e.g.*, *Robison* v. *Caster*, 356 F.2d 924, 925 (7th Cir. 1966) (breach of fiduciary duty claim that attempted to assert a "scheme to defraud" triggered Rule 9(b)); *Bank of Am.* v. *Knight*, No. 11 C 0303, 2012 WL 2368458, at *12 (N.D. Ill. June 20, 2012) (Rule 9(b) applied where allegations

---

[10]  Vann's counterclaim in count II (declaratory relief) is no longer pending as provided in part II, *supra*.  Vann requested his counterclaim in count IV (accounting) be dismissed without prejudice. Dkt. 82.  The only remaining counts for the court to presently resolve are count III (breach of fiduciary duty) and count V (conspiracy).

concerning breach of a fiduciary duty were based on a scheme to defraud); *Premier Cap. Mgmt, LLC* v. *Cohen*, No. 02 C 5368, 2004 WL 2203419, at *2 (N.D. Ill. Sept. 29, 2004) (Rule 9(b) applied to breach of fiduciary duty claim where "allegations of fraud" lay at the core of the claim). Rule 9(b) applies to "averments of fraud" and thus the relevant inquiry is whether the factual allegations giving rise to the claim "[are] premised upon a course of fraudulent conduct." *Borsellino* v. *Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

Vann argues that his breach of fiduciary duty claim does not invoke Rule 9(b) because it does not depend upon Prism Title's participating in the fraud. The allegations in Vann's third-party complaint undercut this argument because they are based on fraudulent conduct. Vann incorporates his prior allegations that DiBenedetto worked with others in a "scheme and artifice to defraud" him. (*See* Am. Countercl. & Third-Party Compl., ¶¶ 34, 53.) Vann further alleges that, during the closing, Prism Title "knew or had reason to know" that Vann had not provided a power of attorney or authorized anyone present at the closing to accept the funds on his behalf, (*id*. ¶ 74), Prism Title then "wrongfully transferred" the funds to DiBenedetto (*id*. ¶ 75), and finalized the transaction recording the mortgage and notes in Vann's name. (*id*. ¶ 76.) These allegations implicate Prism Title in DiBenedetto's fraudulent scheme and thus necessarily invoke Rule 9(b)'s heightened pleading standard.[11]

---

[11]  Vann argues that his breach of fiduciary duty third-party claim is also based on negligent conduct in addition to intentional fraudulent activity; however, he fails to specify which allegations support this theory. Instead, Vann alleges an overarching scheme to defraud and incorporates those allegations by reference in his breach of fiduciary duty claim. If Vann wishes to bring a breach of fiduciary duty third-party claim based on negligent conduct, he must specify which allegations support this theory. *See Knight*, 2012 WL 2368458, at *13 ("It is not the court's job to scour the complaint to determine which allegations support each count. It is plaintiff's job to do so in its brief. It has not.").

Vann, however, has not complied with Rule 9(b). Vann fails to name any individuals at Prism Title who facilitated the breach (although he names Prism Title employee Kator in his conspiracy count). Vann argues that Prism Title participated in the scheme to defraud with DiBenedetto but he fails to provide particular allegations showing when the agreement was made, where it took place, or how it arose. In short, Vann failed to plead the requisite facts showing how Prism Title was a party to DiBenedetto's fraudulent scheme. To bring his fiduciary duty claim, Vann must set forth these allegations with more particularity. Prism Title's motion to dismiss this count is granted without prejudice. Vann is given leave to amend his third-party claim to comply with Rule 9(b).

### B. Conspiracy

Vann also alleges that Prism Title and Kator conspired with DiBenedetto and others in furtherance of the conspiracy. To demonstrate a civil conspiracy under Illinois law, Vann must show "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino*, 477 F.3d at 509. When allegations giving rise to a conspiracy sound in fraud, Rule 9(b) applies. *See id.* at 507-08.

Here, Vann's conspiracy counterclaim is based on a scheme to defraud but is deficient for largely the same reasons articulated in Part II, A, *supra*. Although he identifies Prism Title and Kator as members of the conspiracy, he does not describe their purported agreement with DiBenedetto. Vann alleges that Kator made misrepresentations during the closing in furtherance of the fraud but he stops there. Vann does not allege what Kator said, to whom she made these

misrepresentations, or how these misrepresentations actually furthered the conspiracy. *See Borsellino*, 477 F.3d at 509 ("Here, the complaint tells us nothing about the nature of the purported agreement to defraud the plaintiffs, such as when it was made or which individuals [at the defendant] arranged the conspiracy."). Prism Title's motion to dismiss this count is granted without prejudice so that Vann may have the chance to amend this third-party claim.

## CONCLUSION

The FDIC's motion to strike and to dismiss Vann's amended affirmative defense and amended counterclaim and third-party complaint is granted without prejudice. Prism Title's motion to dismiss Vann's amended counterclaim and third-party complaint is granted without prejudice. At Vann's request, count IV of his amended counterclaim and third-party complaint is dismissed without prejudice. Vann is given until February 8, 2013 to file an amended affirmative defense, and amended counterclaim and third-party complaint. This case will be called for a status hearing on February 12, 2013 at 8:30 a.m.


Dated:   January 23, 2013                    Enter:    *Joan H. Lefkow*
                                                      JOAN HUMPHREY LEFKOW
                                                      United States District Judge

16